**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 1 2 2022

TAMMY H. DOWNS, CLERK

By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DIVISION OF ARKANSAS
CENTRAL DIVISION

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
)
) CIVIL ACTION NO.
) 4:22CV 820 - KGB
)
Plaintiff, ) COMPLAINT
)
) **JURY TRIAL DEMAND**
)
BRINKER INTERNATIONAL PAYROLL )
COMPANY, L.P. , BRINKER )
INTERNATIOAL, INC., BRINKER )
ARKANSAS, INC., d/b/a CHILI'S GRILL & )
BAR, )
) This case assigned to District Judge _Baker_
) and to Magistrate Judge _Ray_
)
Defendant.

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil

Rights Act of 1991, to correct unlawful employment practices on the basis of sex (female) and

to provide appropriate relief to Charging Party, herein identified as "Charging Party," and a class

of aggrieved females who were adversely affected by such practices. As alleged with greater

particularity below, Plaintiff Equal Employment Opportunity Commission (Commission) alleges

that Defendant Brinker International Payroll Co., L.P., Brinker International Inc., and Brinker

Arkansas, Inc., d/b/a Chili's Grill & Bar (collectively Defendant Employer) subjected Charging

Party and the class members to unlawful harassment and a hostile work environment based on

sex (female) and constructively discharged Charging Party.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted under Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and under Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Arkansas.

## PARTIES

3.      Plaintiff Equal Employment Opportunity Commission is the agency of the United States charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and(3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4.      At all relevant times, Defendant Employer Brinker International Payroll Co., L.P., (BIPC), a Delaware limited partnership, has continuously been doing business in the State of Arkansas and employing at least 15 employees.

5.      At all relevant times, Defendant Employer BIPC has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6.      At all relevant times, Defendant Employer Brinker International Inc. (BII), a Delaware corporation, has continuously been doing business in the State of Arkansas and employing at least 15 employees.

7.      At all relevant times, Defendant Employer BII has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

8.      At all relevant times, Defendant Employer Brinker Arkansas, Inc. d/b/a Chili's Grill and Bar (Chili's) has continuously been doing business in Benton, Arkansas, and has continuously employed at least 15 employees.

9.      At all relevant times, Defendant Employer Brinker Arkansas, Inc. has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

10.     More than thirty days before the institution of this lawsuit, Charging Party filed a Charge of discrimination with the Commission alleging violations of Title VII by Defendant Employer.

11.     On July 1, 2022, the Commission issued to Defendant Employer a Letter of Determination finding reasonable cause to believe that Defendant Employer violated Title VII and invited Defendant Employer to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

12.     The Commission engaged in communications with Defendant Employer to provide Defendant Employer with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

13.     The Commission was unable to secure from Defendant Employer a conciliation agreement acceptable to the Commission.

3

14.     On July 27, the Commission issued to Defendant Employer a Notice of Failure of Conciliation.

15.     All conditions precedent to the institution of this lawsuit have been fulfilled.

### STATEMENT OF CLAIMS

16.     Since at least March 2021, Defendant Employer has engaged in unlawful employment practices at their Benton, Arkansas restaurant in violation of Section 703(a) of Title VII, 42 U.S.C. 2000(e)-2(a).

17.     The unlawful employment practices include subjecting Charging Party, a former hostess and To-Go-Specialist, and females as a class to unwelcome sexual harassment.

a.     On or around December 2020, Defendant Employer hired Charging Party, then a 16-year-old high school student, as a hostess and To-Go-Specialist for their Benton, Arkansas restaurant.

b.     This was Charging Party's first job in the workplace.

c.     On or around Charging Party's first day of employment, Defendant Employer required  Charging Party to review more than 20 electronic documents on a Tablet presented to her.

d.     Included within the 20 documents was Defendant Employer's Anti-Harassment Policy.

e.     No one from Defendant Employer sat down and reviewed the Ani-Harassment Policy or any other documents with Charging Party.

f.     At Charging Party's hire and after Charging Party began working, no one from Defendant Employer provided any training on sexual harassment in the workplace.

g.     Defendant Employer's  general manager hired Dominique "DJ" Thompson

4

(Thompson), then a 33-year-old male, as a cook in Defendant Employer's Benton, Arkansas restaurant around December 2020.

 h. Thompson worked the same shift as Charging Party.

 i. Around March 2021, Thompson followed Charging Party into the walk-in refrigerator and sexually assaulted her and prevented her from leaving the refrigerator. This incident lasted for more than five minutes.

 j. When Thompson finally released Charging Party, she ran to the bathroom and cried.

 k. A few days later, Charging Party worked the same shift with Thompson. Again, Thompson followed Charging Party into the walk-in refrigerator and sexually assaulted her a second time. He subjected her to unwelcome touching and prevented her from leaving

 l. Eventually Thompson stopped and allowed Charging Party to leave.

 m. Thompson threatened Charging Party not to tell anyone of the sexual harassment and threatened to follow her home.

 n. Because of her lack of training, her inexperience in the work force, and her fear of Thomson, Charging Party initially told no one about the assaults.

 o. Thompson sexually assaulted Charging Party again sometime in March 2021 after she walked into the outside shed behind Defendant Employer's restaurant to retrieve supplies. Thompson followed her that night into the shed and subjected her to unwelcome touching.

 p. Although Charging Party fought back, Thompson persisted.

 q. Charging Party did not use Defendant Employer's Anti-Harassment Policy because she did not understand the Policy and she feared Thompson threats.

r.      When Thompson requested Charging Party's telephone number, she denied owning a cell phone.

s.      Later, Thompson berated Charging Party after he saw her using a cell phone and threatened her for lying to him. Thompson forced Charging Party to give him her cell phone number.

t.      On or around April 13, 2021, Thompson texted Charging Party an explicit photo of his bare penis.

u.      Then, on April 14, Thompson texted Charging Party again and demanded that she text photos of her private parts.

v.   Charging Party never complied with Thompson's requests.

w.      Sometime in April 2021, but before April 18, 2021, Charging Party shared with a 16-year-old co-worker,  that Thompson had sexually assaulted Charging Party.

x.      Charging Party told her co-worker about the sexual assaults because she wanted the co-worker to walk with her when she had to go into the walk-in refrigerator. The co-worker reported the harassment to the shift leader.

y.      After the co-worker  reported the sexual assaults to the shift leader, the harassment did not cease. Thompson sexually assaulted Charging Party again.

z.      Thompson again trapped Charging Party in the refrigerator and physically assaulted her. Thompson stopped only after two other co-workers entered the refrigerator.

aa.      Around April 18, 2021, Charging Party and another 16-year-old co-worker told General Manager Robert Brown and Assistant Manager Jacob Hefner about Thompson's sexually harassing behaviors.

bb.     Brown responded that he already knew and had waited for them to report the allegations themselves.

cc.     Only then did Brown remove Thompson from the workplace; however, Brown returned Thompson several days later.

dd.     Brown continued to schedule Thompson to work the same time as   Charging Party and other female teens.

ee.     On May 4, 2021, Charging Party's parents went to Defendant Employer's restaurant and subsequently reported Thompson to the police. The police came to the Chili's parking lot, interviewed Charging Party, and told her not to return to work.

ff.     Defendant Employer's corporate office interviewed Charging Party by telephone around May 4, 2021.

gg.     Defendant Employer never contacted Charging Party's parents to inform them of Charging Party's sexual harassment allegations against Thompson.

hh.     The sexual harassment experienced by Charging Party was not welcome.

ii.     The sexual harassment experienced by Charging Party unreasonably interfered with the performance of her work.

jj.     The sexual harassment experienced by Charging Party caused serious emotional harm.

kk.     The unwelcome harassment was severe and/or pervasive and altered the conditions of Charging Party's employment by creating a hostile work environment.

ll.     Thompson also sexually harassed and sexually assaulted  other teens.

mm.     Although Brown learned of one of the class member's allegations, Defendant Employer never investigated her allegation.

7

nn.     In addition to physically touching other teens, Thompson also sent sexual text messages requesting to touch the teens.

oo.     Although Defendant Employer has a sexual harassment policy, Defendant Employer did not effectively distribute the policy to employees in the workplace, did not conduct training on the sexual harassment policy in the workplace. and failed to monitor the workplace to ensure adults were not sexually harassing the teens in the workplace.

18.     The effect of the practices complained of in paragraphs 17 above has been to deprive Charging Party and females as a class  of equal employment opportunities and otherwise adversely affect their status as employees because of their sex (female).

19.     The unlawful employment practices complained of in paragraph 17 were and are intentional.

20.     The unlawful employment practices complained of in paragraph 17 above were done with malice or with reckless indifference to the federally protected rights of Charging Party, and similarly aggrieved female employees.

## CONSTRUCTIVE DISCHARGE CLAIM

21.     Since at least March 2021, Defendant Employer has engaged in unlawful employment practices at their Benton, Arkansas restaurant in violation of Section 703(a) of Title VII,  42 U.S.C. 2000(e)-2(a).

22.     The unlawful employment practices include causing and forcing Charging Party, a former hostess and To-Go-Specialist, to unwelcome sexual harassment.

a.      The Commission repeats verbatim the allegations in paragraph 17a- through oo.

8

b.      After Defendant Employer learned of the allegations of sexual harassment by Thompson against Charging Party, Defendant Employer failed to take action to immediately to protect Charging Party.

c.      Defendant Employer continued to employ Thompson as a cook.

d.      Defendant Employer told  Charging Party and another teen that Thompson needed to continue to work.

e.      Defendant Employer conducted a cursory investigation.

f.      Defendant Employer did not appear onsite at the restaurant to investigate the sexual harassment or to conduct interviews with employees in the workplace.

g.      Because of the harassment and assaults and the continued employment of Thompson, Charging Party's emotional state deteriorated, and her grades began to drop.

h.      Thompson's sexual harassment of Charging Party made the working conditions intolerable for her.

i.      Thompson created fear and anxiety in Charging Party.

h.      Because of Charging Party's failing grades and change in demeanor, Charging Party's parents went to the restaurant to discuss their concerns about their daughter.

i.      At no time did Defendant Employer inform Charging Party's parents about the allegations of sexual assaults and harassment against their daughter by Thompson.

j.      No one from Defendant Employer's restaurant ever contacted Charging Party's parents to alert them about the sexual assaults and harassment allegations.

k.      It was only after Charging Party's mother discovered the photo from her daughter's cell phone of Thompson's bare penis that she learned Thompson had subjected her daughter to sexual harassment.

9

l.      Fearing for her safety and based on the conduct of Defendant Employer, Charging Party was forced to resign.

23.     The effect of the practices complained of in paragraph 22 above has been to deprive Charging Party  of equal employment opportunities and otherwise adversely affect her status as an employee by forcing her to resign because of the sexual harassment because of her sex, female.

24.     The unlawful employment practices complained of in paragraph 22 were and are intentional.

25.     The unlawful employment practices complained of in paragraph 22 above were done with malice and/or with reckless indifference to the federally protected rights of Charging Party.

## PRAYER FOR RELIEF

The Commission requests that this Court:

A.      Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any employment practices which discriminate based on sex, female.

B.      Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees because of their sex, female, and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant Employer to make whole Charging Party and a class of female employees by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

10

D.     Order Defendant Employer to make whole Charging Party and a class of female employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including past and future out-of-pocket losses, in amounts to be determined at trial.

E.     Order Defendant Employer to make whole Charging Party and a class of females by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.     Order Defendant Employer to pay Charging Party and a class of females punitive damages for their malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.     Grant such further relief as the Court considers necessary and proper in the public interest.

H.     Award the Commission its costs of this action.

### JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this 12th day of September 2022.

*/s/ Faye A. Williams*
**FAYE A. WILLIAMS**
Regional Attorney
TN Bar No. 11730

*/s/Amy Black*
AMY BLACK
TN Bar No. 016102

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
1407 Union Avenue, Suite 900
Memphis, TN 38104
Telephone (901) 685-4609
Telephone (901) 685-4606
faye.williams@eeoc.gov
amy.black@eeoc.gov

*/s/ Pamela B. Dixon*
PAMELA B. DIXON
Senior Trial Attorney
AR Bar No. 95085

*/s/ Kat Hodge*
KAT HODGE
Trial Attorney
AR Bar No. 2003100

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
820 Louisiana St., Suite 200
Little Rock, AR 72201
Telephone (501) 900-6145
Telephone (901) 685-4645
pamela.dixon@eeoc.gov
katrina.hodge@eeoc.gov

Attorneys for Plaintiff EEOC

**GWENDOLYN YOUNG REAMS**
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

12